UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
RICHARD QUINONES,

          Plaintiff,

    -against-

THE CITY OF NEW YORK,
DANIEL HALLIGAN,
STEPHEN BARTELS,
DANIEL TEXEIRA,
CONNOR MCMORROW-KWALWASSER, and
MEGHAN DIANI,

          Defendants.
-----------------------------------------------------------------X

**COMPLAINT**

Dkt. No. 23 Civ. 9486

**PLAINTIFF DEMANDS TRIAL BY JURY**

Plaintiff Richard Quinones, appearing by and through his attorneys, Kopke Christiana & Rastetter LLP, hereby alleges as follows:

## Jurisdiction and Venue

1. This civil rights action is brought pursuant to 42 U.S.C. section 1983 and alleges violations of Plaintiff's Fourth and Fourteenth Amendment rights.

2. Jurisdiction is conferred by 28 U.S.C. section 1343, which provides for jurisdiction over all actions brought pursuant to section 1983, and by 28 U.S.C. section 1331, which provides for jurisdiction over all cases brought pursuant to the Constitution and laws of the United States.

3. Venue is proper in the Southern District of New York under 28 U.S.C. section 1391(b)(2) because the events giving rise to Plaintiff's claims occurred in this judicial district.

## Parties

4. Plaintiff RICHARD QUINONES ("Plaintiff" or "Mr. Quinones") is a citizen of the United States and a resident of New York County.

5. Defendant CITY OF NEW YORK ("the City") is a municipal corporation, organized and existing under the laws of the State of New York.

6. The City controls and maintains a police force known as the New York Police Department ("the NYPD").

7. At all relevant times, Defendant DANIEL HALLIGAN ("Halligan" or "Defendant Halligan") was employed as a police officer for the NYPD and assigned to Police Service Area 4.

8. At all relevant times, Halligan was acting under color of the statutes, ordinances, customs, and usage of the State of New York and City of New York, and within the course and scope of his employment as a police officer for the NYPD. Halligan is sued in his individual capacity.

9. At all relevant times, Defendant STEPHEN BARTELS ("Bartels" or "Defendant Bartels") was employed as a police officer for the NYPD and assigned to Police Service Area 4.

10. At all relevant times, Bartels was acting under color of the statutes, ordinances, customs, and usage of the State of New York and City of New York, and within the course and scope of his employment as a police officer for the NYPD. Bartels is sued in his individual capacity.

11. At all relevant times, Defendant DANIEL TEXEIRA ("Texeira" or "Defendant Texeira") was employed as a police officer for the NYPD and assigned to the 9th Precinct.

12. At all relevant times, Texeira was acting under color of the statutes, ordinances, customs, and usage of the State of New York and City of New York, and within the course and scope of his employment as a police officer for the NYPD. Texeira is sued in his individual capacity.

13. At all relevant times, Defendant CONNOR MCMORROW-KWALWASSER ("McMorrow-Kwalwasser" or "Defendant McMorrow-Kwalwasser") was employed as a police officer for the NYPD and assigned to assigned to the 9th Precinct.

14. At all relevant times, McMorrow-Kwalwasser was acting under color of the statutes, ordinances, customs, and usage of the State of New York and City of New York, and within the course and scope of his employment as a police officer for the NYPD. McMorrow-Kwalwasser is sued in his individual capacity.

15. At all relevant times, Defendant MEGHAN DIANI ("Diani" or "Defendant Diani") was employed as a lieutenant for the NYPD and assigned to the 9th Precinct.

16. At all relevant times, Diani was acting under color of the statutes, ordinances, customs, and usage of the State of New York and City of New York, and within the course and scope of her employment as a lieutenant for the NYPD. Diani is sued in her individual capacity.

### Facts Common to All Claims for Relief

### Plaintiff's arrest and the use of excessive force

17. Shortly after 8:00 p.m. on October 27, 2020, a delivery person flagged down Defendants Halligan and Bartels near the intersection of Avenue C and East Third Street in Manhattan.

18. The delivery person reported that Plaintiff had stolen one of his packages and that he believed Plaintiff was in possession of a knife.[1]

19. As Halligan and Bartels approached, Plaintiff fled, and the officers pursued on foot.

20. During the brief chase, Halligan deployed his taser, which struck Plaintiff and caused him to fall to the ground.

21. Halligan then grabbed Plaintiff by his clothes and began repeatedly tasing him, causing him to fall into a pile of trash bags.

22. Halligan and Bartels then began cursing and screaming contradictory orders such as "let me see your hands!", "don't move!"; "put your hands behind your back now!"; and "turn around!".

23. Eventually, Bartels instructed Halligan to stop tasing Plaintiff. Bartels then reached down and began pulling Plaintiff off the trash bags.

24. As Bartels did so, Halligan deployed his pepper spray in Plaintiff's face, causing Bartels to recoil.

---

[1] Plaintiff was not found to be in possession of a knife.

25. Plaintiff then rolled onto his hands and knees on the sidewalk, while Halligan and Bartels continued screaming inconsistent commands such as "get on the ground!" and "give me your hands!". All the while, Halligan continued to tase Plaintiff and kneed him forcefully in the ribs.

26. Eventually, Halligan set down his taser and began repeatedly punching Plaintiff in the face.

27. When Defendants Texeira and McMorrow-Kwalwasser arrived at the scene, Halligan instructed them to grab Plaintiff, freeing Halligan to punch Plaintiff in the face several more times.

28. While four officers pinned Plaintiff to a parked car, Bartels and Texeira joined Halligan in repeatedly punching Plaintiff and pepper spraying him again.

29. When the Defendants had enough, they placed Plaintiff in a seated position against the car, where he remained howling in pain while the Defendants stood around chatting and Halligan wondered out loud about whether he had broken his hand.[2]

30. The use of force during Plaintiff's arrest—including repeated rounds of tasing and pepper-spraying and numerous closed-fist strikes to Plaintiff's face and body—was excessive and unreasonable under the circumstances and caused Plaintiff to sustain serious physical injuries, including fractures to his nose, teeth, and ribs.

---

[2] Halligan was, in fact, treated at a hospital for injuries including lacerations to his hand, presumably caused by punching Plaintiff in the face. Bartels was also hospitalized overnight for chest pain and difficulty breathing stemming from exposure to an excessive amount of pepper spray.

31. Each of the officers present at the scene—including Defendants Halligan, Bartels, Texeira, McMorrow-Kwalwasser, and Diani—observed the use of excessive force against Plaintiff, had a reasonable opportunity to intervene, and deliberately failed or refused to do so.

32. As a result of Defendants' acts and omissions, Plaintiff suffered severe physical, emotional, and psychological injuries.

### The NYPD investigates and endorses the Defendants' use of excessive force

33. NYPD policy requires that a "Threat, Resistance or Injury Interaction Report" ("TRI report") be filled out after every arrest in which force is used. The TRI report is then investigated by the NYPD to determine, among other things, whether the use of force was consistent with department guidelines. If the use of force is determined to be inconsistent with NYPD guidelines, the involved officers are disciplined.[3]

34. Following the Defendants' use of force during Plaintiff's arrest, TRI report # 2020—009-0142 was prepared. Captain Dennis Gray of Police Service Area 4 investigated and determined that the force employed was consistent with department guidelines.

35. The NYPD Internal Affairs Bureau ("IAB") also investigated and reached the same conclusion. These findings were then reviewed and endorsed by IAB higher-ups and supervisors, including Ana Delpilar and Nichols Desmund.

36. As a result, none of the officers involved in Plaintiff's arrest were disciplined.

---

[3] The disciplinary history of NYPD officers can be viewed via the office profile portal on the NYPD's website. *See Officer Profile*, NYPD ONLINE, https://nypdonline.org.

37. NYPD higher-ups and supervisors Dennis Gray, Ana Delpilar, and Nichols Desmund, endorsed and approved the Defendants' use of force during Plaintiff's arrest pursuant to the NYPD's custom of ratifying its officers' unconstitutional uses of excessive force.

## Claims for Relief

### First Claim—Excessive Force and Failure to Intervene in Violation of the Fourth and Fourteenth Amendments (42 U.S.C. § 1983)

**(Against Defendants Halligan, Bartels, Texeira, McMorrow-Kwalwasser, and Diani)**

38. Plaintiff further alleges as follows:

39. The Fourth Amendment to the United States Constitution prohibits unreasonable seizures by law enforcement officers and requires the degree of force used to be objectively reasonable under the circumstances. Whether an officer's particular use of force is reasonable is judged from the perspective of a reasonable officer at the scene.

40. To determine the perspective of a reasonable officer at the scene, a factfinder must consider the totality of the circumstances, including, but not limited to, the nature of the crime or other circumstances known to the officer, whether the plaintiff posed an immediate threat to the officer or others, the relationship between the need to use force and the amount or degree of force used, whether the officer made efforts to limit the amount of force used, and the availability of alternative methods that the officer could have used to accomplish his or her legitimate law enforcement objectives.

41. In this case, the above-described use of force by Defendants Halligan, Bartels, and Texeira was objectively unreasonable and caused Plaintiff to experience severe physical injuries, including multiple fractures.

42. Defendants Halligan, Bartels, Texeira, McMorrow-Kwalwasser, and Diani are liable either because they were direct, integral participants in the use of force, or because they had a reasonable opportunity to intervene but failed to do so.

43. Each of these acts and omissions was performed under color of state law, intentionally, willfully and with reckless disregard for Plaintiff's safety and constitutional rights.

44. The extreme, outrageous, and malicious nature of these acts warrants the imposition of both compensatory and punitive damages.

45. Plaintiff also seeks statutory attorneys' fees and costs.

**Second Claim—Ratification and Failure to Train, Supervise, and Discipline Officers for the Use of Excessive Force (42 U.S.C. § 1983)**

**(Against the City of New York)**

46. Plaintiff further alleges as follows:

47. At all relevant times, the City of New York, by and through its officials and agents at the NYPD, maintained constitutionally inadequate policies, customs, and procedures with respect to training, supervising, and disciplining its officers regarding the use of unconstitutional force.

48. The NYPD has a well-documented custom of ratifying and failing to train, supervise, and discipline its officers for the use of excessive force in response to mass protests. *See Floyd v. City of New York*, Case No. 08-cv-1034 (S.D.N.Y); *In re New York City Policing During Summer 2020 Demonstrations*, Case No. 1:20-cv-08924-CM (S.D.N.Y.); Margaret Garnett, Commissioner, New York City Department of Investigation, *Investigation into NYPD Response to the George Floyd Protests* ("DOI Report), Dec. 2020; New York State Office of the

Attorney General, *Preliminary Report on the New York City Police Department's Response to the Demonstrations Following the Death of George Floyd* ("AG Report"), July 2020.

49. Similarly, the NYPD has a pattern and practice of ratifying and failing to train, supervise, and discipline its officers for the use of excessive force on a smaller scale during individual arrests. For example, in *Jennings. v. Yurkiw*, 18 F.4th 383 (2d Cir. 2021), a jury in the Eastern District determined that NYPD Officers Andrew Yurkiw, Amber LaGrandier, and Joseph Solomito, used excessive force during the arrest of the plaintiff, Thomas Jennings. And yet, according to the officers' publicly available disciplinary history, they were never disciplined and their conduct was ratified. The same can also be said for the officers involved in: *Johnson v. City of New York*, 593 F. Supp. 3d 58 (S.D.N.Y. 2022) (Dwight Powell and Jose Joseph); *Jackson v. Tellado*, Case No. 11-CV-3028-PKC, 2018 WL 4043150 (E.D.N.Y. Aug. 24, 2018) (James T. Gherardi and Ben Kurian); and *Collado v. City of New York*, 396 F. Supp. 3d 265 (S.D.N.Y. 2019) (James Connolly).

50. As a result of the City's custom of condoning the use of excessive force, NYPD officers, including Defendants Halligan, Bartels, Texeira, McMorrow-Kwalwasser, and Diani, have come to believe that the use of excessive force is permissible and will not be punished.

51. The City's custom therefore caused Defendants Halligan, Bartels, and Texeira's unconstitutional use of force, as well as McMorrow-Kwalwasser and Diani's failure to intervene.

52. The City is well-aware that there is a recurring pattern of NYPD officers' use of excessive force against individuals who do not pose an immediate danger to the officers or members of the public.

53. The City is aware that this pattern could be interrupted by training, implementing, and requiring the use of well-known and widely accepted police tactics and techniques.

54. The City is aware that this pattern could be interrupted by actually enforcing formal use of force policy and disciplining officers who use excessive force.

55. And yet, the City, by and through its officials and agents at the NYPD, made an intentional decision to maintain its unconstitutional custom, with full-knowledge that this decision would result in the use of excessive force against individuals such as Plaintiff.

56. The City made this decision by failing to adequately train, supervise, and discipline its officers, and by ratifying their objectively unreasonable conduct, as occurred here and in the above-cited cases.

57. Accordingly, the City is liable to Plaintiff for compensatory damages.

58. Plaintiff also seeks statutory attorneys' fees and costs.

**WHEREFORE**, Plaintiff Richard Quinones demands:

A. A trial by jury;

B. A judgment ordering all Defendants to pay compensatory damages in an amount to be determined at trial;

C. A judgment ordering punitive damages against the Individual Defendants, in an amount sufficient to deter such conduct in the future;

D. Attorneys' fees, costs, and interest, pursuant to 42 U.S.C. section 1983; and

E. Such other and further relief as this Court deems appropriate.

Dated: Brooklyn, New York
October 27, 2023

        Respectfully submitted,
        KOPKE CHRISTIANA & RASTETTER LLP

By: /s/Clyde Rastetter
Clyde Rastetter
clyde@kcrllp.com
Andrew Kopke
andrew@kcrllp.com
Matthew Christiana
matt@kcrllp.com
199 Cook Street, Suite 308
Brooklyn, NY 11206
t/f: (917) 451-9525
*Attorneys for Plaintiff*